UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NARTRON CORPORATION,

     Plaintiff,

v.

BORG INDAK, INC.,

     Defendant.

Hon. Lawrence P. Zatkoff
Case No. 06 -10683

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
Federal Building in the City of Port Huron, State of
Michigan, on the 31st day of March, 2008.

PRESENT:   THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss on Summary Judgment Based on Co-Inventorship (Docket #102).  Plaintiff has filed a response, and Defendant has filed a reply.  The Court finds that the facts and legal arguments pertinent to Defendant's Motion are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments.  Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments.  For the reasons that follow, Defendant's Motion to Dismiss on Summary Judgment is GRANTED.

## II. BACKGROUND

In the early to mid-1990s, Schukra of North America, Ltd. ("Schukra") supplied automakers with lumbar support systems for automotive seats. Schukra also was working to enhance the lumbar support system in the seats of automobiles to include a massage feature. In September 1994, Joseph Benson, an engineer at Schukra, authored a memo detailing key design features of the desired "seat massager unit." Over the next two years, employees at Schukra (including Benson) and Therm-O-Disc, a company retained by Schukra, worked to develop a prototype of the seat massager unit.

As a result of these efforts, Schukra made a formal presentation of the seat massager units to Delphi Interior and Lighting Systems, a tier one supplier to General Motors, on March 21, 1996. Following this presentation, the prototype seat massager units developed by Schukra (including the massage control module designed by Therm-O-Disc and Schukra) were ride tested in Cadillac automobiles in June 1996. Delphi and Cadillac shortly thereafter made an offer to purchase the seat massager units for the next year's production of certain Cadillac automobiles, if the seat massager units could be productionized (*i.e.*, made fully functional and manufactured) quickly enough to meet the start of the next Cadillac program year. One of the requirements to productionize the massage seat units was that the massage control module that controlled the seat massager unit had to be "transparent" (*i.e.*, have no impact on the Cadillac vehicle's existing computer or the existing Delphi seat memory).

Therm-O-Disc informed Schukra that it could not productionize the massage control module, including the transparency requirements, within the timeline required by Delphi and

Cadillac. Therefore, in August 1996, Schukra contacted Plaintiff[1] to act as Therm-O-Disc's replacement. Plaintiff agreed to productionize the massage control module in accordance with the instructions and documentation supplied by Schukra, including the requirement for a transparency feature that Schukra and Delphi required by Cadillac. Plaintiff took on the project to productionize the massage control module, completed the project in a timely manner, and was paid more than $100,000 for its work. After a number of years of using Plaintiff to supply the seat massager units to Delphi and Cadillac, Schukra hired Defendant to replace Plaintiff as the supplier of the seat massager units.

During the time Schukra retained Plaintiff to supply the seat massager units, Plaintiff filed a patent application with respect to the seat massager unit and the seat control module. On April 11, 2000, the U.S. Patent & Trademark Office issued Patent Number 6,049,748 (hereinafter, the "'748 Patent"). The 748 Patent identified the "Inventors" as Todd Newman ("Newman"), David Shank ("Shank") and John Washeleski ("Washeleski"), all of whom were employed by and assigned their contribution or patent rights in the '748 Patent to Plaintiff, identified as the "Assignee." The '748 Patent, which included 15 claims, included the following description in the Abstract:

> An electronic control system is an in-line module for addition to or partial replacement of automotive seat control systems for providing massage and improved features of functional control, especially human lumbar massage and diagnostics. The module

---

[1]Plaintiff is a supplier of electronic systems and components that typically "sense, compute, and control" larger equipment for industrial, commercial, automotive and military applications.

provides the following improved functions and features: an enhanced driver for automatic lumbar massage, or user taught lumbar massage cycle, and a transparency simulator for low power standby operation, motor stall protection open motor circuit detection, motor over current protection, seat position sensor malfunction detection, electrical motor noise attenuation, electrical noise filtering, and also other options. These improvements do not require alternative wiring harness changes and do not affect existing operations of a memory or non-memory seat control mechanism.

Of the 15 claims asserted in the '748 Patent, claim 11 is most relevant to this action. Claim 11 provides:

> 11. The invention as defined in claim 6 wherein said lumbar support adjustor includes an extender.

In 2006, Plaintiff filed this case, alleging that Defendant contributorily infringed on the '748 Patent, specifically claims 1 and 7. In the instant motion, Defendant argues that this case should be dismissed because there is no genuine issue of material fact that Plaintiff failed to disclose at least one co-inventor of the '748, which is necessary to bring an action for infringement. Defendant maintains that Benson (and possibly other Schukra employees) conceived of at least one or more elements of at least some of the claims of the '748 Patent. Accordingly, Defendant asserts that because Benson (1) was an omitted inventor of the '748 Patent, and (2) has not consented to or joined the present suit, Plaintiff's Complaint should be dismissed as a matter of law.

## III. LEGAL STANDARD

### A. Fed.R.Civ.P. 56(c)

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## B.    Co-Inventorship

"35 U.S.C. § 256 provides that a co-inventor omitted from an issued patent may be added to the patent by a court 'before which such matter is called into question.'" *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998).

### 1.    Presumption of Correctness

Where a patent has been issued, there is a presumption that the named inventors are the true and only inventors. 35 U.S.C. § 282. The burden of showing misjoinder or nonjoinder of inventors must be proved by clear and convincing evidence. *Hess v. Advanced Cardiovascular Systems, Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997).  The only named co-inventors of the '748 Patent are Newman, Shank and Washeleski. Thus, Defendant must, by clear and convincing evidence, overcome the presumption that Benson is not a co-inventor.

### 2.    Contribution to the Claimed Invention is Significant in Quality

A purported joint inventor must show that he made "a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, . . ." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998).  Significantly, a purported joint inventor does not qualify merely by assisting the actual inventors. *Ethicon,* 135 F.3d at 1460.

### 3.    Conception as the Touchstone of Inventorship

Each inventor must generally contribute to the conception of the invention. *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).

"Conception" is defined as the "formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986). "An idea is sufficiently 'definite and permanent' when 'only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.'" *Ethicon,* 135 F.3d at 1460 (citing *Burroughs Wellcome*, 40 F.3d at 1228).

"The conceived invention must include every feature of the subject matter claimed in the patent." *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994). Significantly, however, "for the conception of a joint invention, each of the joint inventors need not 'make the same type or amount of contribution to the invention.' 35 U.S.C. § 116. Rather, each needs to perform only a part of the task which produces the invention." *Id.* In other words, "a co-inventor need not make a contribution to every claim of a patent. *See* 35 U.S.C. §116. A contribution to one element of one claim is enough." *Ethicon*, 135 F.3d at 1460 (citing *SmithKline Diagnostics, Inc. v. Helena Lab Corp.*, 859 F.2d 878, 888 (Fed. Cir. 1988)). "Thus, the critical question for joint conception is who conceived, as that term is used in the patent law, 'the subject matter of the claims at issue.'" *Ethicon*, 135 F.3d at 1460.

### 4.    Corroboration

It is an axiom of patent law that a purported inventor's testimony standing alone will not rise to the level of clear and convincing evidence required to prove joint inventorship. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993). In *Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 740 (Fed. Cir. 2002), the Federal Circuit invoked the

venerable rule of *The Barbed Wire Patent* case to reverse the trial court's invalidation of a

patent based on oral testimony of prior use:

> Historically, courts have looked with disfavor upon finding anticipation with only oral testimony. In *The Barbed Wire Patent*, 143 U.S. 275 (1892), the Supreme Court commented on the dangers of invalidating a patent on oral testimony alone.
>
>> In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling upon them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. *Id.* at 284.

Thirty-one years later the Supreme Court scaled back the proof standard of "beyond a

reasonable doubt" to "clear and satisfactory." *Eibel Process Co. v. Minnesota & Ontario

Paper Co.*, 261 U.S. 45, 60 (1923).

Although a purported inventor's testimony, in itself, is insufficient to demonstrate

clear and convincing evidence of joint inventorship, the existence of corroborating evidence

may do so.

> Whether the putative joint inventor's testimony has been sufficiently corroborated is evaluated under a "rule of reason" analysis. *Price*, 988 F.2d at 1195. Under this analysis, "[a]n evaluation of *all* pertinent evidence must be made so that a sound determination of the credibility of the [alleged] inventor's story may be reached." *Id*
>
> Corroborating evidence may take many forms. Often contemporaneous documents prepared by a putative inventor serve to corroborate an inventor's testimony. *See id.* at 119-96.

8

> Circumstantial evidence about the inventive process may also corroborate. *See Knorr v. Pearson*, 671 F.2d 1368, 1373, 213 USPQ 196, 200 (CCPA 1982) ("[S]ufficient circumstantial evidence of an independent nature can satisfy the corroboration rule.") Additionally, oral testimony of someone other than the alleged inventor may corroborate. *See Price,* 988 F.2d at 1195-96.

*Ethicon*, 135 F.3d at 1461 (emphasis in original). The preferred form of corroborating evidence takes the form of tangible records that were made contemporaneously with the alleged prior invention. *See Sand Tech., Ltd. v. Resco Metal & Plastics Corp.,* 264 F.3d 1344, 1350-51 (Fed. Cir. 2001) ("Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated.")

## IV. ANALYSIS

In this case, the only claim that Defendant unequivocally contends Benson contributed to is claim 11.[2]

To determine whether [Benson] made a contribution to the conception of the

---

[2]At various times, and with varying degrees of vigor and support, Defendant also asserts that Benson contributed to claims 1, 2, 12, 14 and 15 of the '748 Patent. As the Court's conclusion with respect to claim 11 is dispositive of this cause of action, the Court does not address Benson's alleged contributions to those claims. The Court notes, however, that the named co-inventors acknowledged that they did not conceive of or design some or all of the expressly described elements in claims 12, 14 and 15. All three named co-inventors conceded that some or all of the expressly described elements in those claims came from Schukra. Accordingly, for the reasons discussed herein *vis a vis* Benson and claim 11, one could, by clear and convincing evidence, conclude that one or more persons other than the named co-inventors likewise contributed to the element(s) described in claims 12, 14 and 15. Defendant has not, however, offered the name(s) of any other such co-inventor(s).

subject matter of claim [11], this Court must determine what [Benson]'s contribution was and then whether that contribution's role appears in the claimed invention. If [Benson] in fact contributed to the invention defined by claim [11], he is a joint inventor of that claim.

*See Ethicon*, 135 F.3d at 1461.

## A.    Elements of Claim 11

Claim 11 reads:

> 11.    The invention as defined in claim 6 *wherein said lumbar support adjustor includes an extender.*

(emphasis added by the Court). Defendant asserts that Benson contributed the element of claim 11 in italics above, *i.e.*, the lumbar support adjustor, including the extender. Plaintiff counters that the "lumbar support adjustor includes an extender" language does not reflect an element of claim 11 such that it could constitute a contribution to the invention which is the subject of the '748 Patent. The Court therefore first must ascertain whether the lumbar support adjustor, including the extender, constitutes a contribution to the conception of the invention. *See Burroughs Wellcome*, 40 F.3d at 1227-28.

The Court finds that the plain language of the '748 Patent clearly reflects that the '748 Patent is not based exclusively on the transparency simulator in the massage control module. More acutely, the Court concludes that the transparency simulator in the massage control module is not the only element of claim 11. For the reasons that follow, the Court holds that the "lumbar support adjustor includes an extender" is an element of claim 11 and, as such, constitutes a contribution to the conception of the invention. First, the Abstract to the '748 Patent states, in part (emphasis added by the Court):

> An electronic control system is an in-line module for addition to or partial replacement of automotive seat control systems for **providing massage and improved features of functional control**, especially human lumbar massage and diagnostics. **The module provides the following improved functions and features: an enhanced driver for automatic lumbar massage, or user taught lumbar massage cycle, and a transparency simulator** . . .

As the highlighted language evidences, the '748 Patent focused on providing the following "improved functions and features:" an automatic or user taught lumbar massage and a transparency simulator. The Abstract (prepared by Plaintiff and/or its agents) therefore is inconsistent with certain of Plaintiff's assertions that the '748 Patent is tied solely to the transparency simulator in the massage control module.

Instead, the Abstract demonstrates that the lumbar massage feature is a, if not the, key contribution involved in the '748 Patent. Schukra would not have needed to approach Plaintiff for purposes of productionizing the massage seat unit (including a control module with a transparent simulator) if Schukra had not (1) conceptualized the seat massager unit, and (2) developed a prototype of the seat massager unit (again, including a prototype massage control module) for presentation to Delphi in March 1996 and for ride testing of the seat massager unit with Cadillac in June 1996. Both of these events, of course, transpired months before Schukra ever contacted Plaintiff about the seat massager unit.

Second, the plain language of certain claims in the '748 Patent reflect that the transparency simulator was not the only element of those claims. For example, in addition to claim 11, claim 14 includes an element beyond the transparency simulator in the massage control module:

14. The invention as defined in claim 7 *wherein said seat control mechanism includes an extender for displacing said lumbar support in at least one additional direction.*

(emphasis added by the Court). Therefore, in both claims 11 and 14, Plaintiff referenced the extender in relation to a lumbar support adjustor and/or displacement of lumbar support. As discussed below, the named co-inventors concede that they:

     a. were not involved in the design of the extender, the lumbar support adjustor or the displacement of lumbar support. Rather, it is undisputed that Plaintiff's role was limited to designing the transparency simulator in the massage control module, *i.e.*, doing the engineering work that resulted in independent claims 1 and 7; and

     b. had no role in the seat massager unit until August or September 1996 and, even then, Plaintiff's role and responsibility was to design the transparency simulator for the massage control unit Schukra wanted productionized.

Third, the '748 Patent includes the following paragraph in the "DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT" section (the "Preferred Embodiment Language"):

In the preferred embodiment, the first motor 24 controls a movement mechanism 26 for displacement of the lumbar support 32 upwardly and downwardly through the seat back. A second motor 28 controls a lumbar support extender 30 and it governs the degree to which the lumbar support extends outwardly from the seat back toward a spinal curvature of the occupant. Both mechanisms 26 and 30 affect the position of the lumbar support 32 of the seat mechanism 16.

This paragraph clearly addresses the lumbar support adjustor, including the extender. As discussed below, however, the named co-inventors disclaimed any participation in the conception or reduction to practice of the matters described in the above paragraph.

Fourth, the displacement of the lumbar support and the lumbar support extender described in the Preferred Embodiment Language are contained in Figures 1 and 2 of the '748 Patent. Such inclusion is indicative of the importance of these components.

Fifth, even the arguments of Plaintiff in contesting this Motion suggest that Plaintiff understands that the transparency simulator in the massage control module is not the only element involved or contribution to the conception in the claims asserted in the '748 Patent. For example, Plaintiff states in its response brief that the

> '748 Patent relates to a massage control module . . . that can be inserted into an existing electrically adjustable seat system *to add massage functionality. . . . The [massage control module] provides this massage functionality by controlling the cyclic motion of the lumbar support member in an automotive seat back.* . . . The '748 Patent provides two versions of the [massage control module], one for use in seats with a memory seat controller . . . and one for use with non-memory seat controls . . .

(emphasis added by the Court). As the foregoing statement exemplifies, at a minimum, the "massage functionality" made possible by the massage control module is a critical element of the '748 Patent. Plaintiff further states in its response brief that "[a]n **aspect** of Nartron's invention is that the [massage control module] be 'transparent' to the preexisting or original components and functions of the seat system" (emphasis added). Necessarily implicit in the argument that transparency of the massage control module is an **aspect** of the invention is that there is at least one *other* aspect of the invention.

For the foregoing reasons, the Court concludes that the lumbar support adjustor that includes the extender, as expressly contained in claim 11, is an element of claim 11 asserted

by Plaintiff in support of the '748 Patent. Therefore, the contributor of that element has made a contribution to the conception of the subject matter of claim 11 and, therefore, the '748 Patent.

## C.   Benson was the Contributor

Plaintiff next argues that, even if there has been a contribution to the '748 Patent by anyone other than the named co-inventors, Benson did not make any contribution to any claim therein. Plaintiff contends that there is no evidence in the record, other than the testimony of Benson himself, to allow for a finding that Benson was a contributor. Of course, Benson's testimony, standing alone, would be insufficient to support his theory of contribution. *See Price, supra.* Based on the evidence in the record, however, the Court finds that Defendant's position is not dependent solely on Benson's testimony.

In his Declaration, Benson states that he was an employee of Schukra from 1991 to 1999 and:

> 3.    In August and September 1996, . . . I worked with Nartron personnel to finalize a control module for the massager for a vehicle seat that I had designed. An example from the '748 patent of some things that I had designed and provided to Nartron personnel (or that I designed and had other Schukra of North America Ltd. personnel provide to Nartron personnel) in the Schukra of North America Ltd. massage mechanism include:
>
> > In the preferred embodiment, the first motor 24 controls a movement mechanism 26 for displacement of the lumbar support 32 upwardly and downwardly through the seat back. A second motor 28 controls a lumbar support extender 30 and it governs the degree to which the lumbar support extends outwardly from the seat back toward a spinal curvature of the occupant. Both mechanisms 26 and 30 affect the position of the

14

lumbar support 32 of the seat mechanism 16.

My efforts pre-dated any involvement of Nartron in this massager mechanism, as demonstrated by the depiction attached here as Exhibit A. We had a prior controller for the massager mechanism provided by Therm-O-Disc, as defined in my overview document created in 1994 and attached as Exhibit B [Exhibit 7].

4. Nartron was involved in this project to add a transparency circuit feature to the controller in order to make it transparent to the automotive computer as we conceived it and presented it to Nartron. Therm-O-Disc decided that it could not continue in the project due to the compressed time period within which we needed to complete the project, and Nartron was willing to work within the time constraints.

5. In the '748 patent, my contributions are found in claims 1, 2, 11, 12, 14, and 15. In some elements, as in the entire combination of the claims, there are also Delphi contributions to provide the conception defined in the claims. In other elements, I created both the conception and the reduction to practice. All of this was delineated in my deposition testimony.

6. One example would be claim 11, where I contributed both the support adjustor and an extender to the conception and reduction to practice of the massager device, and this was provided to Nartron without any input from any Nartron personnel, to be combined with any controller that was generated.

Significantly, Plaintiff has not contested that Benson conceived and reduced to practice the lumbar support adjustor with extender. More significantly, there are a number of items in the record that support Benson's Declaration that he did so.

First, a two page document attached to Benson's Declaration is dated September 27, 1994, approximately two years prior to Nartron's involvement in the project ("September 27, 1994 Document"). The September 27, 1994 Document is titled "Massage Lumbar" and has

15

Benson's name right above the date "9-27-94" in the footer on both pages. The September 27, 1994 Document demonstrates that Benson was working on a device that consisted of a "lumbar support frame or 'basket' that provides a suspension function for a seat back as well as a support contour for the lumbar region of a seat occupant's back . . . to provide a massage effect for the seat occupant." This device included an "electrical control module [to] provide several massage control system control functions." Barry Jones, an employee of Delphi in 1996 and now an executive of Schukra ("Jones"), and Karl Richter, an executive of Schukra in 1996, have testified that the September 27, 1994 Document was prepared by Benson. Plaintiff has not contested the authenticity of the document or that it was prepared by Benson.

Second, Defendant has submitted a document dated September 5, 1996, and titled "MEETING MINUTES" ("Meeting Minutes dated September 5, 1996"). The topic of this meeting was "Massage System," and the attendees included representatives of Schukra and Delphi. Benson (on behalf of Schukra) and Jones and Liz Zigouris (both on behalf of Delphi) were present. The following statement was set froth in the minutes: "Delphi needs to see the module packaging as soon as possible to determine the optimum placement of the module."

Third, each of the named co-inventors of the '748 Patent (Newman, Shank and Washeleski) admitted at his deposition that he did not invent, conceive or reduce to practice any of the mechanical elements of the seat massager unit which is the subject of the '748 Patent and the claims therein. Newman stated that he was not involved in the design of "a vehicle seat having the position adjustment mechanism where the mechanism includes a

16

lumbar support, at least one motor, and an adjustor responsible - responsive to said motor for displacing said lumbar support." Newman further stated that the elements would have come from "an end customer" and "the direct customer was Schukra."

Shank testified that he did not contribute to the invention any of the preferred embodiment referenced in Paragraph 3 of Benson's Declaration. The language in Paragraph 3 of Benson's Declaration is identical to the Preferred Embodiment Language set forth in the '748 Patent, as recited above. Shank also testified that he had no recollection of contributing to the lumbar support adjustor, including the extender, as described in claim 11. Finally, Washeleski was asked:

> Q.　. . . do you recall you, Todd Newman, or David Shank ever developing an extender for lumbar support adjustor, or was that provided to you by Schukra?
>
> A.　As I stated, we worked with Schukra, and then they provided the physical hardware, and we would have provided the control module.
>
> Q.　Okay, so the lumbar support adjustor including an extender was part of the physical hardware that Schukra provided to you?
>
> A.　Yes.

Fourth, Jones and Richter have testified that Benson's representations regarding his contributions and inventorship are accurate. Jones declared that Plaintiff "was a company that Schukra of North America hired to finalize or productionize a controller for the Seat Massager Program . . . [and] Benson had already suggested the use of such controller for use with the mechanical aspects of the massager in the Seat Massager Project . . ." Jones also

confirmed that Schukra had demonstrated the seat massager unit with a working controller to him in March 1996 (Jones was working at Delphi at the time) and that the product, again with a working controller and massager unit, was ride tested in June 1996.

Jones also stated that, "prior to Nartron's involvement in the project to productionize the design," Benson, Elizabeth Zagouris of Delphi (who was also present at the September 5, 1996, meeting) and Jones conceived of the "feature requiring the massage unit controller to intercept certain signals and send virtual signals[.]" Jones further stated

> In some elements [of the '748 Patent], as in the entire combination of claims, there are also Delphi Seating contributions to provide the conception defined in the claims. In other elements, Joe Benson created both the conception and the reduction to practice . . . [including] claim 11, where Joe Benson contributed both the support adjustor and an extender to the conception and reduction to practice of the massager device, and this was provided to Nartron without any input from any Nartron personnel, to be combined with any controller that was generated for the Schukra of North America Ltd. Seat Massager Project.

Richter also confirmed that Plaintiff was hired to finalize or productionize a controller for the seat massager unit in order "to add a feature to an existing controller that we had developed with Therm-O-Disc." Furthermore, both Jones and Richter stated that Benson had designed and provided the Preferred Embodiment Language to Plaintiff's personnel.

Finally, Defendant has submitted a July 26, 1994, letter from the Sales Manager at Therm-O-Disc to the Purchasing Manager at Schukra. This letter states, in part: "Therm-O-Disc is pleased to provide the enclosed quotation for the massage unit control module, per your preliminary specification dated July 13, 1994." Again, this discussion of the massage

unit control module occurred over two years before Plaintiff was approached about productionizing the seat massager units.

Plaintiff does not challenge any of the foregoing. Instead, Plaintiff argues that Benson did not have a skill set in electronics engineering and that Benson's role in engineering the massage control module was to pass Delphi specifications on to Plaintiff. In fact, Benson did state: "Again, my role in this is to pass along the specifications we receive from Delphi to get this to work. The circuitry and the packaging was Nartron's responsibility." Similarly, Benson acknowledged that he had "very little" working knowledge of the software logic within the Plaintiff's massage control module and he did not have the electronic skills to do the circuitry or the programmable logic required to realize the transparency simulator of claim 1 of the '748 Patent.

Plaintiff's focus on the process and activity that took place after Therm-O-Disc backed out of productionizing the massage control module and Defendant contacted Plaintiff to productionize the massage control module (and add the transparency simulator) is misplaced. Defendant never asserts that Benson or anyone at Schukra or Delphi conducted the circuitry and programmable logic for the transparency simulator for the massage control module, and there is no genuine issue of material fact that Plaintiff, through the named co-inventors, was the sole party responsible for designing the circuitry and packaging of the transparency simulator.

Plaintiff next argues that Benson did not make any contribution to the engineering of the massage control module claimed in the '748 Patent. Plaintiff maintains that Benson's

assertions of contributions in claims 11, 12, 14 and 15 of the '748 Patent ring hollow because Benson did not exercise any skill beyond what would have been conventional in the art. Specifically, Plaintiff points out that Benson admitted that (1) the extender element described in claim 11 and 14 was a "conventional mechanical connection," (2) the lumbar support adjustor recited in claim 12 was not his contribution because it pre-dated his employment with Schukra, and (3) the multiple adjustors recited in claim 15 also were conventional technology.

The Court is not persuaded by Plaintiff's argument that Benson did not contribute anything to the '748 Patent because such elements are "conventional in the art." First, Plaintiff has offered no evidence to contradict the representations of Defendant (as corroborated by based on the testimony of Benson, Jones and Richter, the September 27, 1994 Document and the Meeting Minutes dated September 5, 1996) that he designed and reduced to practice the lumbar support adjustor with extender. Second, Plaintiff elected to state the claims in the '748 Patent as it did. As such, Plaintiff chose to have claim 11 include "said lumbar support adjustor includes an extender" as an element. Third, Plaintiff's argument would, in essence, eliminate the language in the immediately preceding sentence from claim 11, such that claim 11 would state "The invention as defined in claim 6 wherein . . ." In other words, based on Plaintiff's argument, claim 11 would be rendered meaningless.

Therefore, properly construed, claim 11 includes the element "said lumbar support adjustor includes an extender" that Benson indisputably conceived of and contributed. Moreover, the Court concludes the language "said lumbar support adjustor includes an

extender" has substantial significance in claim 11, as well as the '748 Patent as a whole. This significance is evidenced by the language of: (1) claim 11 (which would be meaningless if the foregoing language was not included), (2) the Abstract, (3) the "DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT," and (4) Figures 1 and 2 of the '748 Patent, all of which incorporate this contribution. Accordingly, the Court holds that Benson's contribution to an element of claim 11 of the '748 Patent was "not insignificant in quality, when that contribution is measured against the dimension of the full invention . . ." *Pannu*, 155 F.3d at 1351.

## D. Independent Claims

Finally, Plaintiff argues that only claims 1 (concerning the memory module) and 7 (concerning the non-memory module), both of which include the element of a transparency simulator, are independent claims. Plaintiff asserts that "[a]ll other claims are dependent claims and must be construed to incorporate by reference all the limitations of the claim to which it refers. [35 U.S.C. § 112, ¶ 4] Hence, all 15 claims of the Nartron '748 patent require an appropriate transparency simulator." Plaintiff argues that proof of joint ownership of any dependent claim requires analysis and evidence of inventor contribution to (1) the independent claim, and (2) any intermediate dependent claim. Plaintiff contends that Defendant did not present any clear and convincing evidence that Benson conceived of any claimed invention and that Benson made a "not insignificant in quality" contribution to the entire invention. The Court disagrees.

Plaintiff has provided no authority in support of its contention that an inventor would

have to show that he made a contribution to the independent claim. In fact, Plaintiff's contention is in conflict with established law. As set forth above, "for the conception of a joint invention, each of the joint inventors need not 'make the same type or amount of contribution to the invention.' 35 U.S.C. § 116. Rather, each needs to perform only a part of the task which produces the invention." *Seawall*, 21 F.3d at 415. In other words, "a co-inventor need not make a contribution to every claim of a patent." *Ethicon*, 135 F.3d at 1460 (citing *SmithKline*, 859 F.2d at 888). "Thus, the critical question for joint conception is who conceived, as that term is used in the patent law, 'the subject matter of the claims at issue.'" *Ethicon*, 135 F.3d at 1460. *See also Ethicon*, 135 F.3d at 1466 (where the "co-inventor" had contributed to an element of only two of the 55 claims set forth in the patent at issue, the court concluded that "a joint inventor as to even one claim enjoys a presumption of ownership in the entire patent"). As set forth above, the Court has concluded that Benson conceived of some of the subject matter of the claims at issue, specifically the only element expressly set forth in claim 11.

## E.     Conclusion

### 1.     *Benson is a Co-Inventor*

For the reasons stated above, the Court concludes that Defendant has shown by clear and convincing evidence that: (1) Benson conceived of the contribution of an element of claim 11, (2) Benson's testimony regarding his contribution was corroborated by the testimony of others, as well as documentary evidence generated contemporaneous with the conception of the contribution and prior to Plaintiff's involvement in the massage seat

unit project, and (3) Benson's contribution to the claimed invention is not insignificant in quality. Therefore, the Court concludes that Benson should be added as a co-inventor of the '784 Patent.

> 2. *Defendant is Entitled to Dismissal of Action*

"An action for infringement must join as plaintiff's all co-owners." *Ethicon*, 135 F.3d at 1467 (citing *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891)). As Benson has not been joined as a Plaintiff in this infringement suit against Defendant, Plaintiff's complaint lacks the participation of a co-owner of the '784 Patent. *See Ethicon*, 135 F.3d at 1468. Accordingly, this Court must order the dismissal of Plaintiff's suit. *Id.*

## V. CONCLUSION

Accordingly, and for the reasons set forth above, Defendant's Motion to Dismiss on Summary Judgment Based on Co-Inventorship is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: March 31, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 31, 2008.

s/Marie E. Verlinde

Case Manager

(810) 984-3290